Robert F. GROMMET, et al.,
Plaintiffs-Respondents,

v.

ST. LOUIS COUNTY, Missouri, and
Parkway School District,
Defendants-Appellants.

No. 46687.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 18, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 30, 1984.

248

Thomas E. Tueth, St. Louis, for defendants-appellants.

Steven G. Schumaier, Brian A. McKinsey, Clayton, for plaintiffs-respondents.

SNYDER, Presiding Judge.

At the behest of plaintiff-respondent Robert F. Grommet, his wife and three other couples who are neighbors of the Grommets, the trial court enjoined the County of St. Louis and defendant-appellant Parkway School District from using Canary Avenue[1] as an access road to the staff parking lot in the rear of Parkway's Wren Hollow Elementary School and ordered St. Louis County to barricade Canary Avenue where it abuts the school parking lot.

Respondents' petition was originally filed against the County alone in three counts: Count I which sought damages from the County on a theory of inverse condemnation, Count II which requested an injunction abating a nuisance, and Count III which sought damages from the County because of the alleged trespass of the County's agents.

The trial court granted the County's motion to join Parkway. Count III was dismissed and Count I was tried separately to a jury. The present case thus represents an appeal from a trial on Count II alone.

The trial court's judgment on Count II reads in part:

> It is, therefore, ordered, adjudged and decreed that a permanent injunction shall issue that the Defendant Parkway School District and St. Louis County and each of them, their agents and employees and all persons acting under their direction or authority of them or either of them be and they are hereby enjoined and restrained from using the aforementioned Canary Avenue access to the Parkway School District property and parking lot which abuts said Canary Avenue for vehicular traffic of any kind and nature whatsoever, effective forthwith.[2]
>
> It is further ordered, adjudged and decreed that Defendant St. Louis County is hereby directed at its own expense to barricade Canary Avenue where it abuts the aforementioned parking lot in such a fashion that no vehicular traffic may cross from Canary Avenue to Defendant Parkway School District's parking lot or vice-versa. Such barricade shall be of a size, type and construction as to give effect to this order. The County of St.

---

1. The parties refer to Canary and Thrush as avenues, although the plat in evidence designates them as drives.

2. Taken literally the injunction prohibits defendants from using Canary Avenue for any vehicular traffic whatsoever, thus preventing the County from maintaining or snow-plowing the avenue. For the purpose of this opinion the injunction will be interpreted as a prohibition only against vehicular traffic using Canary Avenue for access to the Wren Hollow School.

Louis is ordered to erect the aforesaid barricade forthwith.

Further, the Defendants shall install such signs and give such notice as will notify the public and users of Thrush and Canary Avenues that the streets are not through and are not to be used to reach the school property.

Only Parkway has appealed from the judgment. The judgment is reversed.

Parkway contends the trial court erred: (1) in denying its motion to dismiss Count II of plaintiff's petition for failure to state a claim against Parkway upon which relief could be granted; (2) in granting the injunction because there was no substantial evidence to support a finding of an actionable nuisance; (3) in granting the injunction because even if a nuisance exists, it was caused by St. Louis County, not Parkway; and (4) in granting the injunction because the burden of abatement was improperly placed on Parkway and the court did not apply the "comparative" rule.

Plaintiffs are eight individual homeowners whose four homes abut Thrush and Canary Avenues in St. Louis County. The sketch below, which was copied from a drawing to scale, shows the streets and roads relevant to the present case and the boundaries of Parkway Wren Hollow Elementary School:

Although Canary and Thrush Avenues have been public streets since 1924, until the early nineteen seventies the abutting landowners maintained the streets as gravel roads. Before Parkway built the Wren Hollow School, Canary Avenue continued south over what is now school property and intersected with Wren Avenue.

St. Louis County granted Parkway's petition to vacate the portion of Canary Avenue which ran through the Wren High School property some time after 1975. In addition, the County paved Canary to a width of about twelve feet and Thrush to a width of about sixteen feet, or enough for one lane of traffic, although the easement for the public streets is thirty feet wide.

The County also granted Parkway access to Canary where Canary abuts the Wren Hollow School's property. Parkway thus uses Canary Avenue as an access to its service entrance and staff parking lot at the rear of the Wren Hollow School.

Although plaintiffs made known their opposition to the vacation of Canary Avenue and the use of that street and Thrush Avenue as access to the Wren Hollow School, the County and Parkway disregarded their concerns.

There was evidence that the opening of the Wren Hollow School caused many problems stemming from increased traffic on Thrush and Canary Avenues. Traffic congestion occurs frequently on the one-lane streets. Mr. Weilert, one of the respondents, testified that he had to deliver his and his wife's son because an emergency vehicle did not get to his house on time, not because of traffic congestion, however, but because the emergency vehicle took the wrong road. Often, when vehicles going in opposite directions meet, one of the vehicles must leave the pavement and sometimes travel outside the public right-of-way so as to leave ruts in respondents' lawns.

The use of Canary and Thrush Avenues as an access to the Wren Hollow School has caused plaintiffs other problems as well. The County has spread so much salt on the streets in winter that the salt leaches into the respondents' land and kills

grass and trees. During the summer months, youths use the staff parking lot for beer and drug parties because they can escape over Canary Avenue from police who apparently use Wren Avenue to come to the school when residents report parties in progress.

Before addressing Parkway's points relied on, this court must determine whether Parkway may appeal from that part of the injunction which literally enjoins only the County, and from which the County filed no appeal. In particular, may Parkway complain of the trial court's order that the County barricade Canary Avenue? This court finds that Parkway may appeal from the trial court's judgment because it was aggrieved by the judgment and its legal interest injuriously affected.

■ "An appealing defendant cannot complain of error committed against a non-appealing co-defendant unless the error is prejudicial to the rights of the appealing defendant." *Amos v. Altenthal*, 645 S.W.2d 220, 228[14] (Mo.App.1983). Thus, only if the appealing defendant is aggrieved by an alleged error committed against a nonappealing co-defendant may the appealing defendant complain.

■ Whether an appealing defendant is prejudiced or aggrieved by a decree which orders only a nonappealing party to take or refrain from an action is a question which has been discussed in few Missouri cases. This court finds that under the facts present here, Parkway is an aggrieved party for purposes of appeal under the statute. § 512.020 RSMo. 1978. Parkway had an interest recognized by law in the subject matter of the litigation and its interest was injuriously affected by the judgment. *See Dubinsky Brothers, Inc. v. Industrial Commission of Missouri*, 373 S.W.2d 9, 12–13 (Mo. banc 1963).

■ In addition, the trial court's decree was directed against not only the County, but also against Parkway, when it enjoined Parkway from using Canary Avenue as an access road to Parkway property. The in-

junction against the use of Canary Avenue and that part of the decree which orders a barricade to be erected where Canary Avenue abuts the Parkway parking lot are so inextricably related as they affect Parkway that the entire judgment must be considered on appeal.

█ Respondents argue that no notice of appeal was filed concerning that portion of the decree which ordered the erection of a barricade. The record, however, shows that the notice of appeal filed by Parkway states that it appeals from the "judgment and decree on Count II," a copy of which is attached to the notice.

Parkway's first contention is that the trial court erred in denying Parkway's motion to dismiss Count II of plaintiffs' petition because it fails to state a claim upon which relief may be granted against Parkway. It is unnecessary to rule on this point because Parkway was not joined as a defendant based on respondents' desire for relief from Parkway, but rather because Parkway had an interest in the subject matter of the lawsuit or because complete relief could not be afforded to plaintiffs and County in Parkway's absence. See Rule 52.04(a).

Parkway has not contested the propriety of its joinder under Rule 52.04(a), and it remains in the lawsuit as a defendant because of its interest in, and legal relationship to, the subject matter of the litigation and the trial court's joinder order under the rule.

█ The first issue is whether respondents may enjoin the various acts of County and Parkway as nuisances. "The term [nuisance] signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions on use or conduct which the proximity of other persons or property in civilized communities imposes on what would otherwise be rightful freedom." 66 C.J.S. Nuisances § 1 (1950); *Rodgers v. Kansas City*, 327 S.W.2d 478, 483 (Mo.App.1959). The deter-

mination of whether a nuisance exists depends on the special circumstances of each particular case. See *Crutcher v. Taystee Bread Co.*, 174 S.W.2d 801, 805[5] (Mo. 1943).

█ The mere driving of automobiles on the paved portion of the roadway or on the unpaved portion of the roadway easement cannot be considered a nuisance. The public is entitled to the full and free use of all the territory embraced within a public roadway. *State ex rel. State Highway Commission v. Johns*, 507 S.W.2d 75, 79 (Mo. App.1974).

█ Although the *Johns* case, *supra* held that a private person may not erect structures in any portion of a highway, whether traveled or not, it is indicative of a broader principle, namely that private persons have no right to impede the public's use of a roadway, whether by self-help or by the aid of an injunction. See *Wallach v. Stetina*, 28 S.W.2d 389, 390[1] (Mo.App. 1930).

No evidence was adduced in the present case that agents of Parkway or County drove unreasonably while on the public roads. On the contrary, respondent Grommet testified he had no complaints about the way the Parkway teachers or drivers of delivery trucks drove.

█ Respondents' contention in this regard is simply that others' use of Canary and Thrush impeded respondents' own ability to use the roads. Although all may become justifiably irritated at traffic congestion, none may bring an action for nuisance based on that fact alone. Every member of the public has as great a right as respondents to use Thrush and Canary Avenues.

█ Moreover, even if the use of the public streets could be enjoined, respondents are not the proper parties to seek the injunction. Respondents' complaint is that the increase in traffic has inconvenienced them in getting to and from their homes because when two cars meet along Canary or Thrush, one must back up or move off the pavement and because stalled cars often block the streets. The injury suffered

by respondents is no different in kind from that suffered by other members of the public, who also have the right to unimpeded progress along public thoroughfares.

... [A] private person cannot maintain an injunction suit to restrain a public nuisance, unless he shows a special injury to himself, differing in kind and not merely in degree from the general injury to the public.

*Lademan v. Lamb Construction Co.*, 297 S.W. 184, 186[3, 4] (Mo.App.1927); see also *Biggs v. Griffith*, 231 S.W.2d 875, 880[5, 6] (Mo.App.1950). Respondents have shown no such special injury to themselves caused by the increased traffic on Thrush and Canary.

■ Likewise, the threat that the increased traffic along the narrow paved roadways of Canary and Thrush Avenues poses to the safety of children walking along those roadways (there is no sidewalk) is at most a public and not a private nuisance. No children were parties to the instant lawsuit. The evidence does not even show whether respondents had any children who were endangered by the traffic along Canary and Thrush Avenues.

■ The other acts of which respondents complain may be subject to an injunction if found to constitute a nuisance. See generally, 66 C.J.S. Nuisances § 6 (1950). Automobiles driving outside the roadway easement and leaving tire marks on plaintiffs' lawns directly invade plaintiffs' property rights. The spilling of salt on plaintiffs' lands and the spreading of too much salt on the roads, thereby killing plaintiffs' vegetation is also an invasion of private property. Drug and beer parties on the school grounds may also be a nuisance.

Parkway next raises the point that, even assuming the evidence supports a finding of an actionable nuisance, the trial court erred in entering a judgment against Parkway because there was no showing that Parkway's conduct proximately caused the nuisance. The point is well taken.

This court has found, *supra,* that the problems of increased traffic and the safety of children pedestrians are not nuisances actionable by respondents, but that automobiles driving outside the public roadway easement, the spilling of salt, and drug and beer parties may be actionable nuisances. The issue is whether Parkway's conduct was shown to be the proximate cause of errantly driven automobiles, the salt spilling, or the drug and beer parties. "Some causal connection must exist between the defendants and the nuisance complained of." *Kelly v. Boys' Club of St. Louis, Inc.,* 588 S.W.2d 254, 257[6–8] (Mo.App. 1979).

■ Parkway is not responsible for drivers who leave the thirty-foot easement and damage plaintiffs' lawns. The evidence was somewhat ambiguous as to whether the trespassing drivers were traveling to or from the Wren Hollow School, but even assuming that all the drivers were going toward or away from the school, Parkway cannot be liable for their trespasses under the facts in the present case.

There was no substantial evidence that the operators of the errant automobiles were Parkway's agents. The evidence suggested that teachers, parents, persons making deliveries and rendering services to Parkway all used the Canary Avenue access.

Parkway is not liable for the acts of parents and independent contractors. The evidence fails to distinguish between agents and nonagents of Parkway insofar as trespassing automobile drivers is concerned.

■ Moreover, the evidence does not lead to an inference that the teachers and other employees of Parkway were operating within the scope of their employment while traveling along Canary and Thrush Avenues. Indeed, the evidence is that the teachers used Canary and Thrush when commuting to and from the Wren Hollow School. The general rule is that a servant using an automobile in going to and from his place of work is acting for his own purposes and not on behalf of his master. *Smith v. Fine,* 351 Mo. 1179, 175 S.W.2d 761, 766[8, 9] (1944); *Curtis v. Juengel,* 297 S.W.2d 598 (Mo.App.1957).

The manner in which the road salt was spread has also not been shown to have

been caused by Parkway. Nor has there been any showing that Parkway has the authority to control the clearing of streets in winter.

Parkway could not be held responsible for the drug and beer parties which were held on the school parking lot and from which emanated loud yelling and screaming. The police were there numerous times, although they used the Thrush Avenue entrance and the party-goers seemed to escape by using Canary and Thrush. There was no evidence that Parkway officials sanctioned the parties in any way.

 Respondents cite *Kelly v. Boys' Club of St. Louis, supra,* for the proposition that a causal connection is proved if a defendant has reasonable anticipation of harm and fails to exercise reasonable care to prevent the harm. There was no evidence that Parkway officials knew of the drug and beer parties. Therefore, they cannot be held responsible for them, nor can their failure to take steps to prevent the parties be found to be a cause of the respondents' injuries here.

Respondents offered no evidence of conduct on the part of Parkway which was the legal cause of any injury to them. The trial court, therefore, erred in entering the judgment which directly and injuriously affected Parkway's legal interest in the use of the public thoroughfare which abutted its property.

 Finally, the remedy sought by respondents, the barricade across the Canary Avenue access, was beyond their power. Parkway is an abutting landowner on Canary Avenue, with a right of access equal to respondents'. As between abutting landowners, none has a right of access superior to another's.

 The only nuisance that might have been enjoined was the spreading of salt on respondents' lawns and the causing of ruts by the driving on respondents' lawns. No mention was made of these actions in the trial court's decree and respondents have not appealed. Parkway was not the cause of any nuisance that was actionable. It follows, therefore, that the judgment must be reversed.

Parkway is respondents' neighbor, for better or worse, with rights of access and use equal to respondents. Alleviation of traffic congestion by widening the paved portions of Thrush and Canary to accommodate two lanes of traffic would substantially remove the problems regarding ingress, egress and progress. Respondents, however, seem dissatisfied with this remedy.

One suspects that respondents hope for a return to the halcyon days when their bucolic and idyllic neighborhood was uninterrupted by the Wren Hollow School's activity. Unfortunately for respondents, metropolitan civilization has arrived at their doorstep and they must learn to live in peace with the annoyances and irritations which accompany modern urban and suburban life. No man, and no neighborhood in today's sea of suburban development, is an island.

The injunction and the order to erect the Canary Avenue barricade are dissolved. The judgment is reversed.

SATZ and GAERTNER, JJ., concur.